UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
INSURANCE COMPANY OF NORTH
AMERICA,

                              **MEMORANDUM & ORDER**

                 Plaintiff,         Civil Action No. 06-3124
   -against-                  (DRH)(ARL)

GEORGE ZAGLOOL, JENNIFER
ZAGLOOL, and CHRISTOPHER
HARTMAN,

                 Defendants.
-------------------------------------------------------X

**APPEARANCES:**

**Rubin, Fiorella & Friedman LLP**
Attorneys for Plaintiff
292 Madison Avenue, 11th Floor
New York, New York 10017
By;    James E. Mercante, Esq.
         Michael E. Stern, Esq.

**Law Offices of Timothy F.X. Jones, P.C.**
Attorneys for Defendant George Zaglool
143 Willis Avenue
Mineola, New York 11501
By:    Timothy F.X. Jones, Esq.

**Kramer & Pollack, LLP.**
Attorney for Defendant Jennifer Zaglool
143 Willis Avenue, Suite 2
Mineola, New York 11501
By:    Joshua D. Pollack, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Insurance Company of North America ("Plaintiff" or "INA") commenced this

action seeking a declaratory judgment that there is no coverage for a boating accident that occurred on June 10, 2003 and that it is not obligated to indemnify or defend Defendants George Zaglool ("Zaglool") or Christopher Hartman ("Hartman") against claims arising out of said accident. Presently before the Court is INA's motion for summary judgment. For the reasons set forth below, the motion is granted to the extent that the Court holds that (1) Plaintiff is not obligated to indemnify or defend Hartman against claims arising out of the accident at issue; (2) in accordance with the Policy's household resident exclusion there is no coverage available under the Policy for Zaglool's liability, if any, to residents of his household.

## Background

The following facts are undisputed unless otherwise noted:

Zaglool is the owner of a 1997 thirty-one foot Sonic vessel with two engines of 415 horsepower each. The Sonic vessel is a high performance speedboat capable of speeds of 60 miles per hour or more..

INA issued a Yachtsman Policy to Zaglool effective for the period August 22, 2002 through August 22, 2003 (the "Policy") providing insurance coverage for the Sonic vessel pursuant to the terms and conditions contained therein. The Policy contains a "High Performance Vessel Endorsement with Named Operator Endorsement" which provides:

> In consideration of the premium charged, the policy is amended as follows:
> **Named Operator:**
> Warranted by the insured that the coverage provided by this policy applies only when the vessel is operated by:
> ***George Zaglool***

The Policy also includes the following Navigation Warranty: "***ATLANTIC COAST NAVIGATION WARRANTY*** : Warranted confined to Atlantic coastwise and inland tributary waters of the United States and Canada between St. John, New Brunswick and Morehead City, North Carolina."[1] Further, the Policy contains certain exclusions, including the following:

> ***Exclusions***: We do not provide coverage under Part B: Liability Coverage for:
> a.    liability of other covered persons to you, your spouse, or other persons who reside in your household:
> b.    your liability to your spouse, or other persons who reside in your household.

Also relevant to the instant motion is the "Covered Person" section of the Policy. It provides:

> Covered person is defined as you, or any person or legal entity operating your vessel(s) as shown on the Declarations page for private pleasure use with your direct and prior permission. It does not include:
> a.    any paid captain or crew member
> b.    any person or legal entity operating, or employed by, or the agent of a marina, boat repair yard, yacht club, sales agency, boat service station or similar organization. However, we will cover your liability for bodily injury or property damage caused by any of these people or organizations.

On June 10, 2003 while Hartman was driving the Sonic vessel, an accident occurred

---

[1] The application for insurance contained a section entitled "Waters to be navigated" wherein the applicant can choose to navigate in Atlantic Coastal Waters, Pacific Coastal Waters, Gulf Coastal Waters, Chesapeake Bay, the Great Lakes, Puget Sound or Inland Non-Tidal Waters of State(s). Zaglool requested insurance coverage to enable him to navigate in Atlantic Waters with limits of Eastport, Maine to Cape May, New Jersey. Based on his application, the Policy was issued with an Atlantic Coast Navigation Warranty.

wherein Zaglool's daughter, Defendant Jennifer Zaglool ("Jennifer"), was injured.[2] At the time of the accident, Hartman (and not Zaglool), was at the helm, driving and steering the Sonic, as well as controlling its speed and direction. Defendants contend that Hartman was at the helm of the Sonic vessel because he was a marine mechanic hired by Zaglool to service, repair and maintain the engines of the vessel. On June 26, 2003, INA issued a denial of coverage letter to Zaglool and a disclaimer letter to the guests on the Sonic vessel, including Jennifer, for breach of the named operator warranty and the exclusion from coverage for liability to "persons who reside in your household."

## Discussion

### I. Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could

---

[2] It is undisputed that Jennifer resides with Zaglool.

find in the non-movant's favor. *See Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)). "Rule 56(e)'s requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertions that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson*, 375 F.3d at 219 (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999)).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the

5

substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55. A district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide the district court in its determination of a summary judgment motion. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *See id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" Id. at 211 (citing *Matsushita*, 475 U.S. at 587).

In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). That being said, it is well-established that a non-movant cannot defeat summary judgment with nothing more than "unsupported assertions," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995), or the allegations in its pleadings. *See Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also* Fed. R. Civ. P. 56(e).

## II. The Contentions of the Parties

Plaintiff presents two bases on which it contends it is entitled to summary judgment. First, Plaintiff contends that Zaglool breached the named operator warranty. According to Plaintiff, because the Sonic is an ocean-going vessel, the Policy is exempt from New York Insurance Law § 3420(e) which, *inter alia*, requires liability insurance policies to cover liability for death or injury resulting from the negligence of any person operating to or using a vessel with the express or implied permission of the insured. Continuing, Plaintiff argues that the named operator warranty and the policy exclusions are enforceable and Zaglool's breach of warranty releases Plaintiff from liability. Second, Plaintiff contends that there is no coverage available under the Policy for Zaglool's liability to Jennifer because of the household resident exclusion.

Defendants respond that the intrafamily exclusion is void as against public policy. Further, they argue that allowing Hartman to operate the vessel did not breach the warranty because (1) under the policy Zaglool has an obligation to maintain the vessel and/or (2) the covered persons section of the Policy provides coverage for the negligent actions of a mechanic.

## III. Relevant Law

"A marine insurance contract is governed by maritime law and thus invokes federal admiralty jurisdiction." *New Hampshire Ins. Co. v. C'Est Moi Inc.*, 406 F. Supp. 2d 1077, 1081 (C.D.Cal. 2005) (citing *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961). However, "[a]bsent a specific federal rule, federal courts look to state law for principles governing maritime insurance policies . . . and apply federal maritime choice of law principles to determine which state's law applies." *Commercial Union Ins. Co. v. Flagship Marine Serv., Inc.*, 190 F.3d 26, 30 (2d Cir. 1999). The parties do not point to, and the Court has not found, a specific federal

rule. Accordingly, having applied federal choice of law principles, the Court concludes, as have the parties, that New York law applies.

**IV. Section 3420 of the New York Insurance Law Does Not Apply To the Policy**

Section 3420(e) of the New York Insurance Law provides, in relevant part:

> No policy or contract of personal injury liability insurance or of property damage liability insurance, covering liability arising from the ownership, maintenance or operation of any . . . vessel as defined in section forty-eight of the navigation law, shall be issued or delivered in this state . . . unless it contains a provision insuring the named insured against liability for death or injury sustained . . . as a result of negligence in the operation or use of such . . . vessel . . . by any person operating or using same with the permission, express or implied of the named insured.

N.Y. Ins. Law § 3420(e).

Section 48 of the New York Navigation Law refers to the definition utilized in Section 2 of that law which defines vessel as any floating craft. *See* N.Y. Nav. Law §§ 2(6), 48. However, New York Insurance Law § 3420 specifically provides that its requirements do not apply to the kinds of insurance set forth in Insurance Law § 2117(b)(3). *See* N.Y. Ins. Law § 3420(i). "One such type of insurance set forth in that section is 'insurance in connection with ocean-going vessels against any of the risks specified in [N.Y. Ins. Law § 1113(a)(21).]'" *Progressive Northeastern Ins. Co. v. Amer. Ins. Co.*, 2001 WL 959183, at *3 (S.D.N.Y. Aug. 21, 2001) (quoting N.Y. Ins. Law § 2117(b)(3)(B)). As the specified risks embrace marine protection and indemnity, the coverage at issue in this case, the Court must determine whether the Sonic is an ocean-going vessel.

Whether a vessel is an ocean-going vessel depends not on the capabilities of a particular vessel, but rather on the relevant policy's "Policy Territory." *See Jefferson Ins. Co. v. Cassella*, 261 F. Supp. 2d 160, 164-165 (E.D.N.Y. 2003), *vacated on other grounds in part on reconsideration*, 2003 WL 23411876 (E.D.N.Y. 2003) (citing cases); *Progressive Northeastern*, 2001 WL 959183, at *10-11. The express geographic limits in the policy at issue are "Atlantic coastwise and inland tributary waters of the United States and Canada between St. John, New Brunswick and Morehead City, North Carolina." The language "Atlantic coastwise" indicates that the Sonic is an ocean-going vessel for purposes of New York Insurance Law § 2117(b)(3)(B). Thus, New York Insurance Law § 3420(e) does not apply to this policy.

## V. The Named Operator Warranty

Plaintiff contends that Hartman's operation of the Sonic breached the named operator warranty of the policy and voids the coverage afforded by the policy. A warranty in an insurance contract "represent[s] a promise by the insured to do or not to do some thing that the insurer considers significant to its risk of liability under an insurance contract." *Flagship Marine*, 190 F.3d at 31. Insofar as express warranties in marine insurance contracts, the courts of New York have consistently recognized that "an express . . . warranty must be literally complied with . . . . noncompliance forbids recovery, regardless of whether the omission had causal relation to the loss." *Jarvis Towing & Transp. Corp. v. Aetna Ins. Co.*, 298 N.Y. 280, 282 (1948). *Accord Flagship Marine*, 190 F.3d at 31 (stating "warranties in marine insurance contracts must be strictly complied with, even if they are collateral to the primary risk that is the subject of the

contract, if the insured is to recover.").[3]

The parties do not dispute that the provision at issue is a warranty. Rather, the dispute is over the terms and construction of the warranty. Plaintiff takes the position that the warranty precludes the operation of the Sonic by anyone other than Zaglool. Zaglool counters that Hartman's operation did not breach the warranty because the Policy's Engine Warranty requires normal maintenance of the vessel and "it is unfathomable that the operation of the vessel by a mechanic was a breach of the policy when the policy itself requires the owner to maintain the vessel." [Zaglool Mem. In Opp. at 3.] Zaglool also relies on the covered person portion of the policy, which states that, while a "person or entity operating as or employed by a marina, boat repair yard, boat service station or similar organization" is not covered by the policy, "we will cover your liability for bodily injury or property damage caused by any of these people or organizations." Reading the named operator warranty and the covered person provision together, Zaglool maintains that the policy provides coverage for his liability for bodily injury or property caused by the enumerated persons or organizations and therefore his liability for the bodily injury caused by Hartman is covered.

Notwithstanding Zaglool's representations to the contrary, the Engine Warranty does not require normal maintenance of the vessel. The Engine Warranty provides: "We agree to provide coverage on your insured vessel only if the engine(s), drive train and propulsion gear are and

---

[3] A different rule applies to non-marine insurance contracts. "In all areas other than maritime insurance, an insured's breach of warranty does not 'avoid an insurance contract or defeat recovery thereunder unless such breach materially increases the risk of loss, damage, or injury within the coverage of the contract.'" *Flagship Marine,* 190 F.2d at 31 (quoting N.Y. Ins. Law § 3106(b)).

10

remain, the original unmodified equipment provided by the vessel's manufacturer. Any modification or alteration of the engine(s), drive train or propulsion gear, without prior written agreement, will automatically void all coverage under this policy. This does not apply to normal maintenance of the equipment." The import of this warranty is to preclude the owner from modifying the vessel, presumably to increase its speed capability, as such modification would increase the risk to the insurer. The reference to maintenance is obviously to exclude any "normal maintenance" of the engine(s), drive train and propulsion gear from being considered a modification thereof. The Engine Warranty section imposes no affirmative obligation to maintain the vessel, thus abrogating the lynchpin of Zaglool's argument.

Turning to Zaglool's "covered persons" argument, the dispute is, in essence a disagreement about the construction of the warranty. Hence, a recitation of the rules of construction governing insurance contracts is in order.

Courts must give effect to "the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract" in construing an insurance policy. *Kimmins Indus. Serv. Corp. v. Reliance Ins. Co.*, 19 F.3d 78, 81 (2d Cir. 1994). "The parties intent must be ascertained by examining the policy as a whole, and by giving effect and meaning to every term of the policy." *Hartford Ins. Co. of Midwest v. Halt*, 223 A.D.2d 204, 646 N.Y.S.2d 589, 594 (4th Dept. 1996) (citing *County of Columbia v. Continental Ins. Co.*, 83 N.Y.2d 618, 628 (1994)). If the terms of an insurance policy are unambiguous, they must be given their plain meaning. *Flagship Marine*, 190 F.3d at 33 (citations omitted). "[T]he need to resort to rules of construction arises only when an ambiguity exists." *Id*. "[A]mbiguity exists only where the terms of a contract could suggest more than one meaning when viewed

objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Alexander & Alexander Serv., Inc. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998) (internal quotations omitted). Moreover, courts must "avoid construing conflicting provisions and ambiguities within a policy in such a manner as to negate certain coverages, or in ways that render coverage provisions mere surplusage." *U.S. Underwriters Ins. Co. v. Affordable Housing Found., Inc.*, 256 F. Supp. 2d 176, 181 (S.D.N.Y. 2003), *aff'd*, 88 Fed. Appx. 441 (2d Cir. 2004). Moreover, "where two seemingly conflicting provisions reasonably can be reconciled, a court is required to do so and to give both effect." *Steadfast Ins. Co. v. Sentinel Real Estate Corp.*, 283 A.D.2d 44, 51, 727 N.Y.S.2d 393, 399 (1st Dept. 2001) (citations omitted). The policy must be read as an "integrated whole . . . assigning to each of its various parts its proper role in delineating the scope of coverage." *Bretton v. Mut. of Omaha Ins. Co.*, 110 A.D.2d 46, 48, 492 N.Y.S.2d 760, 762 (1st Dept.), *aff'd*, 66 N.Y.2d 1020 (1985). "If an insurance policy is ambiguous, all ambiguity must be resolved in favor of the policy holder in order to promote coverage for losses to which the policy relates." *Hartford Fire Ins. Co. v. Mitlof*, 208 F. Supp. 407, 412 (S.D.N.Y. 2002) (citing *Kimmins Indus. Serv. Corp. v. Reliance Ins. Co.*, 19 F.3d 78, 81 (2d Cir. 1994)). Insurance policies are to be construed in favor of the insured and this rule is applied with particular diligence in construing the meaning of a warranty or exclusion from coverage. *Kimmins*, 19 F.3d at 81; *Hartford Fire*, 208 F. Supp. 2d at 412. "In order to be enforced, exclusions or exceptions from policy coverage must be specific and clear; they are not to be extended by interpretation or implication." *Kimmins*, 19 F.3d at 81. With these precepts in mind, the Court turns to the policy

at issue.

As set forth above, the named operator warranty provides that "In consideration of the premium charged, the policy is amended as follows: **Named Operator:** Warranted by the insured that the coverage provided by this policy applies only when the vessel is operated by: **_George Zaglool_**." Notably, the provision does not state that it supersedes and replaces the "Covered Persons" provisions. *Cf. Steadfast Ins.,* 283 A.D.2d at 50-51, 727 N.Y.S.2d at 398. While it could be argued that to the extent there is a conflict between the terms of the endorsement and the terms of the preprinted form, the terms of the endorsement should control,[4] the rule is, as noted earlier, that "where two seemingly conflicting provisions reasonably can be reconciled, a court is required to do so to give both effect." *Steadfast Ins.*, 283 A.D.2d at 51, 727 N.Y.S.2d at 399. *Accord County of Columbia v. Continental Ins. Co.*, 83 N.Y.2d 618, 628, 612 N.Y.S.2d 345, 349 (1994) (holding "it is settled that in construing an endorsement to an insurance policy, the endorsement and the policy must be read together, and the words of the policy remain in full force and effect except as altered by the words of the endorsement"). In order to give effect to both provisions, the Court holds that the named operator warranty does not affect coverage of the named operator, to wit Zaglool, for his liability for bodily injury or property damage caused by "any person or legal entity operating, or employed by, or the agent of a marina, boat repair yard, yacht club, sales agency, boat service station or similar organization." Since, for purposes of this motion, the Court must assume that Hartman was operating the boat in

---

[4] The Court notes that in its Reply Memorandum, Plaintiff does not specifically address Zaglool's argument that the named operator warranty and covered persons provision should be read together.

the capacity of a mechanic and a mechanic would fall within the enumerated or "similar" persons or entities, this construction precludes granting Plaintiff's motion for summary judgment as to Zaglool on the basis of the named operator warranty. As to Hartman, however, there is no coverage under either construction and as to Hartman Plaintiff's motion is granted.

*Gfroerer v. Ace Ame. Ins. Co.*, 2004 U.S. Dist. Lexis 27450 (W.D.N.Y. Dec. 22, 2004), *aff'd*, 2006 U.S. App. Lexis 12975 (2d Cir. May 19, 2006), cited by Plaintiff does not compel a different result. In *Gfroerer*, the question was whether the term "operated by" was ambiguous and whether the conduct of a person, described as a marine mechanic, powerboat enthusiast and high performance vessel expert that was hired by the contract vendee for the vessel, was "operating" the vessel in violation of the named operator endorsement. *Gfroerer* did not discuss any interaction between the named operator endorsement and the covered persons provisions and does not stand for the proposition that there is no mechanic exception.

Plaintiff's motion seeking summary judgment on its claim that Zaglool breached the named operator endorsement and thereby precluding coverage for Zaglool under the Policy is denied. The motion is granted, however, as to Hartman.

## VI. Liability to a Household Resident.

The policy excludes coverage for Zaglool's liability to "[his] spouse, or other persons who reside in [his] household." The parties do not dispute that under the language of the exclusion there is no coverage under the policy for any liability of Zaglool to Jennifer, who resides in Zaglool's household. Zaglool contends, however, that the provision is against New York public policy, citing *Allstate Insurance Co. v. Anzalone*, 119 Misc. 2d 222, 462 N.Y.S.2d 738 (Sup. Ct. Nassau Co. 1983). For the reasons set forth below, the Court declines to follow

14

*Anzalone*.

Preliminarily, the Court reiterates that although the policy falls within this Court's admiralty jurisdiction, "[a]bsent a specific federal rule, federal courts look to state law for principles governing maritime insurance policies . . . and apply federal maritime choice of law principles to determine which state's law applies." *Flagship Marine Serv., Inc.*, 190 F.3d at 30. *See also Becker v. Poling Transp. Corp.*, 356 F.3d 381, 388 (2d Cir. 2004) (noting that "[i]n admiralty cases, federal maritime law applies where is exists."). Here, the parties do not cite, and the Court has not found a specific federal rule addressing the propriety of household exclusions in marine insurance policies. *Cf. Acadia Ins. Co. v. McNeil*, 116 F.3d 599, 603 (1st Cir. 1997) (noting that court had not found any federal maritime rule addressing the propriety of intrafamily exclusions in marine insurance policies). "The absence of such a rule eliminates the possibility of a federal-state conflict and remits us to state law." *Id.* at 603-04. In this case, the applicable state law is New York.

In ascertaining the law of New York, this Court "looks to the decisional law of [New York] as well as to the state's constitution and statutes." *Travelers Ins. Co. v. 633 Third Assoc.*, 14 F.3d 114, 119 (2d Cir. 1994). Where the state law is ambiguous or uncertain or there is an absence of authoritative law from the state's highest court, "the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." *Phansalkar v. Andersen Weinroth & Co.*, 344 F.3d 184, 199 (2d Cir. 2003) (quoting *Travelers*, 14 F.3d at 119); *accord DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005). In doing so, the federal court "must give 'fullest weight' to the decisions of a state's highest court and 'proper regard' to the decisions of a state's lower courts." *Phansalkar*, 344 F.3d at 199

15

(quoting *Travelers*, 14 F.3d at 119). Decisions of a state's intermediate and lower courts are not binding on the federal courts. "[W]e consider the language of the state courts to be helpful indicators of how the state's highest court would rule. Although we are not strictly bound by state intermediate appellate courts, rulings from such courts are a basis for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *DiBella,* 403 F.3d at 112 (internal quotations and citations omitted).

The Court now turns to *Anzalone.* In *Anzalone*, the infant son of the owner and named insured of a boat was seriously injured when he fell overboard while the boat was being operated by another child of the insured. The sole issue before the court was the validity of the exclusion provisions for bodily injuries to resident relatives of the insured. 119 Misc. 2d at 223; 462 N.Y.S.2d at 738. In holding the provision contrary to public policy, the *Anzalone* court relied on two provisions in the New York Insurance Law. The first provision, section 167(2) is a predecessor of what is now § 3420(e) and like § 3420(e) required that no policy of insurance for a vessel shall issue unless it contains a provision insuring the named insured against liability for death or injury sustained as a result of the negligence by any person operating or using the vessel with the permission of the named insured. The second provision relied on by the court was then § 167(3) of the Insurance Law which, according to the *Anzalone* court, "specifically authorized insurers to exclude liability coverage for the spouse of the insured" but did not give insurers the right to expressly exclude coverage for other relatives of the insured. *Id.* at 225. Because the court found these statutory provisions precluded intrafamily exclusions, the *Anzalone* court found the intrafamily exclusion in the policy was void as against public policy.

The Court declines to follow *Anzalone*. First, there is no indication that *Anzalone* involved an ocean-going vessel. As discussed earlier, ocean-going vessels, like the Sonic, are statutorily exempt from the requirements of § 3420 of the New York Insurance Law. Insurers are prohibited from limiting their contractual liability only as to statutorily mandated coverage. *See Slayko v. Sec. Mut. Ins. Co.*, 98 N.Y.2d 289, 295, 746 N.Y.S.2d 444, 448 (2002). Because the vessel at issue here is an ocean-going vessel, the statutorily mandated coverage is inapplicable. On that basis alone, *Anzalone* is distinguishable.

In addition, the Appellate Division in *Suba v. State Farm Fire & Cas. Co.*, 114 A.D.2d 280, 498 N.Y.S.2d 656 (4th Dept. 1986), rejected a claim that the requirements of New York Insurance Law § 3420(a) prohibit an insurer from excluding coverage for intrafamily tort liability except to the extent that § 3420(g) allows the insurer to exclude liability to the insured's spouse. The *Suba* court reasoned:

> If Insurance Law § 3420(g) merely "authorized insurers to exclude interspousal liability plaintiff's argument might be persuasive. Then the specific action of the Legislature in only granting permissive authority to exclude interspousal liability could by negative implication be construed to prohibit the exclusion of intrafamily liability. In fact, however, subsection (g) does not authorize a permissive exclusion; it actually reverses the usual rule that exclusions must be clearly stated in the policy and substitutes a statutory presumption that interspousal liability is excluded from coverage unless an "express provision relating specifically thereto is included in the policy." . . . In this context the Court of Appeals statement in *Yankelevitz v. Royal Globe Ins. Co.*, 50 N.Y.2d 928, 466 N.Y.S.2d 295 . . . cited by plaintiff that "the determination of the Legislature to apply this exclusion only to spouses is not violative of equal protection" . . . does not support plaintiff's argument that this is the *only* exclusion permitted; rather it merely reflects the fact that this is the only exclusion "deemed included as a policy provision."

114 A.D.2d at 283-84, 498 N.Y.S.2d at 658 (citations omitted) (emphasis in original). *Accord Gov't Employees Ins. Co. v. Pagano*, 251 A.D.2d 452, 674 N.Y.S.2d 719 (2d Dept. 1998).

*Suba* is instructive for two reasons. First, it demonstrates the inaccuracy of the *Anzalone* court's statement that the New York Legislature "specifically authorized insurers to exclude liability coverage for the spouse of the insured," which statement formed a pivotal part of the *Anzalone* court's reasoning. Second, *Suba* stands for the proposition that where, as here, there is no statutorily mandated coverage for liability, an intrafamilial exclusion in an insurance policy is not against the public policy of New York.

The parties have not cited, and this Court has not found any New York cases addressing the validity of a household resident exclusion in an insurance policy covering an ocean-going vessel. This Court predicts that the New York Court of Appeals would hold that the household residential exclusion in an insurance policy covering an ocean-going vessel does not violate New York's public policy. The Court bases its conclusion on (1) the rule in New York that insurers are prohibited from limiting their contractual liability only as to statutorily mandated coverage, *see Slayko v. Sec. Mut. Ins. Co.*, 98 N.Y.2d 289, 295, 746 N.Y.S.2d 444, 448 (2002); (2) NewYork's exclusion of ocean-going vessels from statutorily mandated coverage; and (3) the decision in *Suba* by an intermediate appellate court upholding an intra-familial exclusion in analogous circumstances.

In sum, the Court declines to hold that a provision in a marine insurance policy for an ocean-going vessel which excludes coverage for liability to persons who reside in the insured's household is against New York's public policy. The Court therefore grants Plaintiff's motion for

18

summary judgment on the ground that under the Policy's household resident exclusion there is no coverage available under the Policy for Zaglool's liability, if any, to Jennifer.

## Conclusion

Plaintiff's motion for summary judgment is granted to the extent that the Court holds that (1) Plaintiff is not obligated to indemnify or defend Hartman against claims arising out of the accident at issue; (2) in accordance with the Policy's household resident exclusion there is no coverage available under the Policy for Zaglool's liability, if any, to Jennifer. Plaintiff shall submit a proposed declaratory judgment in conformity herewith on notice within ten (10) days.

Dated: Central Islip, New York
      December 7, 2007

/s/
Denis R. Hurley
Senior District Judge